The Honorable, the Judges of the United States Courts of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Courts of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention for the Court is now seating. God save the United States and this Honorable Court. All right, we'll begin with DePaola v. Clarke and Mr. Moore. Good morning, Your Honors. My name is Charles Moore. I am a law firm with a white case in Washington, D.C. and I'm representing Eric DePaola, who is an inmate at Rhode Island State Prison in Pound, Virginia. And we're here today because Mr. DePaola has appealed the dismissal of his claims on July 2015 because the district court simply failed to apply the normal standards the courts are to apply whenever a court is dealing with a motion to dismiss a pro se complaint. Those standards are pretty well known. You ordinarily, as a district court, give the benefit of the doubt, take as true the factual allegations of the complaint. And in the case of a pro se plaintiff, the court is to be even more liberal, as this court stated in King v. Rubenstein and various other cases. And here, the district court identified a number of specific statements from defendant appellees. For example, the state don't care about these issues. For example, there's nothing more they will let me do. There are various specific statements that the district court identified in its opinion, but simply failed to give credit to Mr. DePaola in looking at whether the complaint should be dismissed. And so that is error, and that should be reversed. Mr. DePaola should be given an opportunity to proceed in discovery and to determine whether, in fact, the state was deliberately indifferent to his serious medical needs. For example, with respect to, he has several sets of claims. Some of them are physical in nature. With respect to a rash that he had that's resulted in substantial scarring, as the plaintiff sets forth in footnote three in paragraph 52. With respect to his ongoing IBS issues that have still not been cured, despite medicines that Mr. DePaola repeatedly let the appellee defendants know were not effective. And then with respect to his mental health issues, which are well documented in his record, and which, as he alleges in paragraph 67, he repeatedly told multiple appellee defendants that he was suffering from these issues and he would just like to have somebody do a full medical, mental health evaluation of him. That was not done. Mr. Moore, that seems to me to be the crux of the case. Not the physical issues, but the mental health issues, the documented suicide attempt. Could you take us through your argument on why the statute of limitations does not create a problem for the mental health issue? Beginning, I don't think you need to go back to the 2003, but at least beginning with the suicide attempt in 2010. Yes, Your Honor. There are a couple of reasons. And so it's set forth in Scott v. Clark's case of the Western District of Virginia, which lays out very well how the claimant violation doctrine works in the Eighth Amendment context. There are various other cases where courts have applied it. This isn't an isolated incident. So we did have a suicide attempt in 2010 where Mr. DePaola was strapped down and set forth in the complaint in paragraphs 56 through 60 as it describes those issues. But in addition to that, he talks about in 65 and 66, paragraph 65 and 66 of the complaint, how he suffers from a variety of, today, of mental health-related issues, whether it's bizarre thoughts, hallucinations of a kind that, for example, in inmates of the Occoquan v. Berry, which is a District of D.C. case, talks about the inmates having hallucinations. He's pacing. He sleeps for days at a time. Other issues of that nature that are laid out in very significant detail there in paragraph 65 and 66. And then in paragraph 67, as he talks about there, he alleges that he tells, he's told a number of the defendant appellees, both orally and in writing, as he alleges there, that these issues are creating significant mental stress for him based on his history, and that he has this history, and that he should be at least evaluated to determine what the status of his concussions are. Now, the district court doesn't deal with the suicide attempt at all in his opinion, does it? No, it does not, Your Honor. And it does not because it simply gives the back of the hand to Mr. DePaula with respect to any issues that occurred before July of 2013. So, Your Honor, we would contend, based on the mental health issues, that this is a fairly simple claim. Mr. DePaula is asking for the Red Island State Prison officials to come in and give him a full evaluation, not just to kind of look at him and say, hello, we talk about there are various cases, for example, where, whether it's Bowring, where the court talked about needing to do a mental health evaluation, and that goes back to 1977, this is all Mr. DePaula is seeking here. He's seeking an opportunity to have the defendant appellees and the medical staff take a look at him in a significant and substantive sense and to determine whether he needs, for example, some of the medicines that he was taking between 6 and 16, as was described in the complaint, whether there are some other sorts of treatments that ought to be had with respect to his continuing mental health issues. Is that it? With respect to his mental health, yes. So our position, Your Honor, is that with respect to his mental health issues, he's had a total denial of treatment in that regard, and that that violates the Eighth Amendment. The right to mental health treatment is pretty well established, both in Bowring and in subsequent cases, and that the court should reverse on that basis. We also, as Your Honor alluded to, we also have a number of physical health issues that Mr. DePaula identified. In the first half of his complaint, roughly through about paragraph 52, 53, where he talks about some of the IBS issues and the rash issue, and where he engages in a very detailed, colloquially over several months, where he's having conversations with various defendant appellees about these medical issues and where he's having conversations and quotes them. For example, I mentioned at the open the idea of Dr. Mullen saying, stop crying, the state don't care about your issues, or being told this is all they'll let me do, or being told you're in prison, what do you want me to do about your food, regardless of whether you're still suffering from pain. And all of those statements, again, giving credit to Mr. DePaula and looking at this in the light most favorable to him, those are statements that would reflect deliberate indifference of a serious medical need. If those were proven at trial, that, in fact, a defendant said to him, the state simply doesn't care about your issues, it's difficult to imagine a statement that better reflects deliberate indifference than we don't care about you. Not that we're judging this in our medical judgment, but we're basing this on the fact that we simply don't care about what happened to you. And as the court also may note in this complaint, he also alleges with respect to some of the defendant appellees, is Mr. DePaula filed a number of grievances to try to get help. And in the case of one of those, which I believe is actually what led to the state doesn't care about your issues, he filed a grievance against Appellee Cox. And when he was then seen by Appellee Mullins, the first question was not, how are you doing, let me check on your physical condition, but it was, are you going to drop this complaint? To which Mr. DePaula said no, and so he was not served. He was not given service, not because there was the medical need for that, but essentially because of retaliation. And certainly that's a very reasonable inference to draw from those allegations. So with respect to the status here, Your Honors, the standards for this are fairly well established. What the defendant, what we have to prove is that the defendants were aware of a risk that Mr. DePaula could be subject to Wonson and a reasonable pain. We believe we've met that standard. Mr. DePaula, who was a pro se plaintiff below, has met that standard. Talking about how he was in constant pain. And again, with respect to the rash that he says subsided, and appellees make much of that, that rash has left substantial scarring on the genital area. Which, you know, as we talk again about King v. Rubenstein, and also about the Wonson and various other cases that deal with the genital area, that's a very sensitive area. He was in a lot of pain. Mr. DePaula identified, for example, that the rash did burn and itch. I believe the district court, at J to 11, had mentioned that Dr. Mullins was unaware that the rash burned and itched. But in fact, Mr. DePaula alleges in paragraphs 40, 41, and 42, that he said it does burn and itch. He used the phrase, it does, when he was told that the policy would not cover him unless he burned and itched. And so he was in pain for that time, and now it's left some permanent scarring on him. And we believe that that satisfies any standard for serious medical need. Or at a minimum, there's a factual dispute as to that, that again should be allowed to proceed to discovery. In addition, Your Honors, we also have a claim with respect to the policies 720.1. Those are set forth in our brief that are described there, and the issues that we take with those policies are set forth there, as Mr. DePaula has alleged. For example, the idea that the medical staff can only see a plaintiff or see an inmate for three medical issues at a time, which in our view, and certainly on the basis of a motion to dismiss record, where all we have is the complaint, there's no medical basis for that. For example, if an inmate fell down and broke his leg, his arm, and had some internal injuries and other things happened, the idea that the medical staff could come in and say, oh, well, we'll only see you for the broken leg and for the tooth that fell out and for, you know, your arm that's hurting, and that there may well be other injuries that they don't check him for, would seem to be a plain violation if that inmate is in pain. And so there are all these policies, for example, with respect to that, or even with respect to the skin rash. Again, Mr. DePaula did tell Dr. McDuffie that his skin rash burned and itched, but there certainly is no medical basis to conclude that a skin rash that doesn't burn and itches, it's assumed that it didn't, even though he alleges that it did, that that rash wouldn't have caused him significant pain and that rash couldn't have been dangerous to his health. And again, it's set forth in paragraph 52, footnote 3, that he alleges that that rash left him with substantial scarring, which we think is, at least at the motion to dismiss, a significant evidence that the rash was a serious medical issue. I don't know if the court has additional questions with respect to... All right, you've got some rebuttal. Yes, we do. Thank you, Your Honor. All right, Mr. Cox. May it please the Court, Trevor Cox from the Virginia Attorney General's Office for the Correctional Defendants, who are five prison administrators, including the Director of the Department of Corrections, Harold Clark, and three qualified mental health professionals. At the outset, let me note for the Court that by agreement of counsel, I will have ten minutes of argument time. Mr. Jesse will have five minutes of argument time for Dr. McDuffie, and Ms. Johnson will have five minutes of argument time for the medical staff defendants. So with respect to the claims against the correctional defendants, the district court's decision should be affirmed for three reasons. And I agree with Judge Keenan that the strongest of his claims is probably the mental health claims, but let me clear the brush on the others first. About his claim that the rash and gastrointestinal issues were not properly treated, he brought that claim against five prison administrators. So even assuming that there was a serious medical need, the administrators against whom the claim is brought had no personal knowledge or involvement in the treatment, did not interfere with the treatment, there's no allegation of that, and that simply can't be the basis for deliberate indifference. Three of them, Clark, Robinson, and Washington, DiPaola did not allege that they had any involvement whatsoever. He did allege that Barksdale and Schilling were aware of his issues because he filed a grievance disputing the treatment that he was getting from the medical staff, but they were not deliberately indifferent for deferring to medical staff in terms of his treatment. In terms of the policies that Mr. DiPaola is challenging, allegedly in Operating Procedure 720.1, we couldn't find them in Operating Procedure 720.1. But even if they were there, he can't facially challenge them, and policies can't be deliberately indifferent, only people can. But even if he could challenge those, the policies themselves don't violate the Eighth Amendment. It's not cruel and unusual punishment to limit a patient to three issues per sick visit. It's not cruel and unusual punishment to require that you see a nurse or a doctor. It's not cruel and unusual punishment to not treat a rash that is not burning or itching. So for those reasons, we think the district court's decision should be affirmed, and he should also be denied leave to amend if the court affirms, because he never moved for leave below to amend, and he's not said where additional allegations would lead to a different result. But let me turn to the count two, the mental health allegations, which he brought against the same five prison administrators and then three qualified mental health professionals. At the outset, again, Clark, Robinson, and Washington, these are senior officials at the Department of Corrections. He doesn't allege that they had any personal involvement in his treatment, interfered with his treatment, and so they can't possibly be deliberately indifferent. In the same situation with Schilling and Barksdale, they were aware of the treatment that he was getting because Mr. DeFilo filed a grievance of which Schilling and Barksdale each was unfounded. So that leaves the qualified mental health professionals, Fletcher, Huff, and Trent, and the existence of those roles, the fact that these qualified mental health professionals exist, I think speaks to the care that the Department of Correction takes to make sure. What about the suicide attempt that he's alleging? I mean, certainly the officials of the prison were on notice if he was ordered to be put in 24-point restraints following the suicide attempt. I mean, this was a major event, I would assume, at any penitentiary when somebody tries to kill himself and the official's order of action would be taken to restrain the person. And then he was alleging, I think, that also wasn't even a hunger strike, that he tried to starve himself after the 24-point restraints were imposed. So really everybody in the place was on notice that this would happen, it seems to me, just by virtue of the nature of the official action that was ordered in response to the suicide attempt. So why doesn't he get his day on board in this? You know, he might lose on summary judgment, but why doesn't he get a chance to try to show that he's got a voice? That's my hang-up here. I mean, I totally understand your position on the physical ailments and the issues there, but when the officials of the penitentiary and the mental health professionals know that he's tried to kill himself, they've taken action, and he alleges whether he did or not remains a matter of his proof, but he's alleging that he kept asking for help, and they wouldn't give it to him. So why shouldn't he just at least get to summary judgment to show what he can gather in terms of the case? I'd be happy to respond to that, Your Honor. So that is the only allegation about any communication with these defendants. It's paragraph 67, I think, that he repeatedly asked for help, written and or verbally, from a number of people, including Fletcher Huff Trent, Shilling, and Barksdale. It's somewhat, it's very vague, unclear what he said to whom, when, to put them on notice that he needed some unidentified help. But the backdrop of this, of course, is that he is receiving psychological care. He makes a big deal in the brief that he's not receiving any screening or treatment or anything. Well, we've got to go by what he alleges, and then he might just completely lose very quickly what he's put to his proof. Sure, well, I mean, you can take notice of the policies that the Department of Corrections has in place. There's a whole slew of mental health services policies in the 7th Operating Procedure, 730 series, that show the lengths to which the Department of Corrections goes to make sure that everyone who needs to be seen is seen. And I think the grievances that he submitted, I think they're pages 34, 35, 36, 37, show that he is being seen by qualified mental health professionals who are trained in psychology, who have just determined that he does not need to see a psychiatrist. You can't offer that as proof in response to the dismissal of his complaint, can you? Aren't you running up against the concept that other courts have dealt with, the issue of trying to offer as true evidence that the plaintiff has offered, for example, to show that he exhausted administrative remedies? And you can't go behind that and pose that as a defense to the dismissal of the complaint, can you? Well, I don't think he denies any of the content of that. I think what he's saying is, given all that... It seems to me that we look at his allegations, and I think other circuits have said that you can't offer as a matter of truth the contents of something, in fact, in the context of a prisoner suit. If they're trying to show that they exhausted their administrative remedies, then you can't say, aha, look, they said he doesn't have a mental health problem. That's not an appropriate defense to the motion to dismiss. Well, district court can certainly consider any exhibits that are attached to a complaint or even to a motion to dismiss, and if they refute the allegations, then I think you can consider them. Now, what about Argoin's case in May of 2016? Didn't we deal with that issue? I think there was an incident report that directly refuted... Right, but didn't we say that in cases in which the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, which would be the case here, trying to show he exhausted his remedies, it is inappropriate to treat the contents of that document as true. I mean, we said that last year. So what has changed about the law then in this circuit to say that we do consider it as true? Well, I guess I would just respond by saying there's not a one-to-one, head-to-head, he said, she said here. What he is alleging is that he wants to see a psychiatrist. He demands to see a psychiatrist. He's not happy with the psychological support that he's getting. Well, this complaint says, is alleging that he has been denied treatment, and it seems to me you're trying to use this document of his exhausting his remedies as an end-around in just the manner that Argoin said it can be done. He is alleging that he's denied treatment, in which he defines as he wants to be seen by a psychiatrist. Right. Well, he may lose. But what I'm saying is why can't he, why aren't his allegations sufficient? He's talking about the suicide attempt, you know, that he's been trying to get help and he's been denied it. If they're false, his case won't get anywhere. Why is it our job to knock him out right now? Right. I guess I would just close by saying that those grievance reports clearly show that he has been seen by qualified mental health professionals. He had, at the time of one of them, a mental health score of zero. And so regardless of what issues he had in the past, people have looked at him and determined that further intervention by a psychiatrist That's not in his pleadings. Aren't we limited to considering his pleading? Okay. Thank you. Mr. Jessie. May it please the Court, my name is John Jessie. I represent Dr. McDuffie. As a preliminary matter, I'd like to address the sexual limitations issues. Clearly this was filed July 19, 2015, and by adopting the Virginia sexual limitations as a two-year statute. The complaints involve the intake issue in 2004 and then the either one or two suicide attempts or alleged suicide attempts in 2010. Because these events occurred more than two years before, then that would not be something that would be considered. This Court has not, in fact, adopted the continuing violation doctrine per se. But even if it had, the circuits that have adopted it talk about that these are not non-events. They are events that they look at, that they're continually dealing with a specific pain or problem like the hernia case. But the continuing violation doctrine is the principle of federal common law, isn't it? The only issue here is whether our circuit wants to adopt it in the context of a deliberate indifference. That's exactly right. No, no. It is simply a policy or it is a theory that has not been adopted by this Court, but it would not apply here because it requires a continuing seeking treatment for a particular problem. And it's not the allegation that he has since 2004 been continually seeking treatment. But even beyond that, of course, he never made the allegation that he had tried to discuss this or have any indication that Dr. McDuffie was involved with that. And on the deliberate indifference claim, I mean, the key to that from Dr. McDuffie's standpoint is that the doctor must know of the problem and then make the determination of not providing the appropriate care. The inmate's serious condition is there and he does nothing about it. Here there is no allegation that would come close to deliberate indifference for Dr. McDuffie. They do not allege that Dr. McDuffie was aware of the condition. Indeed, the plaintiff affirmatively alleges that he never spoke with Dr. McDuffie, the psychiatrist or psychologist, while in the Department of Corrections. Paragraph 60, which is on the Joint Appendix, page 15, says, Specifically, since entering VDOC, the plaintiff has never received any psychotherapy or treatment for his mental illness, nor has he ever been able to speak to an institutional psychiatrist or psychologist in rate to such. In fact, his claim about Dr. McDuffie is, I was never allowed to see him. No one opened the gate to let me in. Was Dr. McDuffie on the staff at the time of the alleged suicide attempt in 2010? It doesn't appear in the record, but he was not. A very recent addition to this organization. The plaintiff never spoke to Dr. McDuffie. They don't allege that Dr. McDuffie otherwise knew about his mental health condition and certainly fails to state a deliberate indifference complaint. Now, in the response, the brief written on behalf of the plaintiff stated that even though this was not truly alleged in the complaint, that Dr. McDuffie must have had some knowledge. And for Dr. McDuffie to say, I didn't know, I was never consulted, in effect, the quote was cynical and circular. And it said, they asked, how could someone ask for help if they did not even know? How could Mr. DiPaolo be blamed if Dr. McDuffie wasn't called? But he never alleged that he spoke to Dr. McDuffie, let alone asked for help from him. In fact, on paragraph 60 he says he was not allowed to speak with him. And then on paragraph 67, which they try to hang their hat on, it says, he repeatedly attempted to obtain help from Dr. McDuffie, along with a lot of other people. And it certainly doesn't say how he sought the help. It certainly doesn't allege that he saw him. Perhaps he requested, as it said, I want to see a psychiatrist. But that doesn't implicate Dr. McDuffie in the issue of a deliberate indifference case. And finally, the only issues that he actually discusses that occurred during the period of time that would be within the statute of limitations, perhaps, is, I've spent a lot of time lying on my bed in my room, and I paste in my room, and I really have terrible feelings about being in solitary confinement. All of which are true, but submit do not raise it to the level of substantial risk, particularly if there is no allegation that the doctor had any information about this himself. This is no different than if a child goes to his mom and says, take me to a doctor. She decides you don't need to go to a doctor. You can't sue the doctor later because the doctor was never consulted. No further questions. I appreciate my time. Thank you. Mr. Johnson. May it please the Court, my name is Carlene Johnson. I represent those who are identified as the physical medical defendants. This is two doctors, three LPNs, and a registered nurse. I think it's important to highlight, first of all, with respect to my client in particular, I would guess, the context includes that Mr. Tufalo, as the Court likely well knows, is a prolific litigator. And so the nature of the allegation. I think it's a context that matters in this respect, Judge Keenan, because the standards for liberally construing a plaintiff's inmate's allegations, I think in considering how frequently this particular inmate has brought claims in this court, has brought appeals, has in fact litigated cases all the way to trial, has taken discovery in other cases. I think that is something that's relevant to consider in terms of how sophisticated or unsophisticated to construe this particular plaintiff. Because there is that context and it is in the record. So what is in the record regarding his prior litigation of mental health claims? Well, I don't represent the mental health defendants. I'm sorry, Your Honor. I represent the two doctors who are just MDs and the LPNs and the registered nurse. Right. But I was asking you a general question. What is in the record regarding his litigiousness in terms of mental health claims? Is he a serial violator of the court system in terms of filing these every day, every week, every month? I don't know about daily or weekly. I do know this is the second appeal that he's had within a couple of months period, and the prior one, which has been ruled on affirming the district court, same district judge's decision, was just in the last couple of months. And it did concern my understanding is that it did. Do you know whether it did? Yes, in relationship to his claim about being in solitary confinement. And I believe that the allegations were having to do with pacing and sleeplessness and those same sorts of things that are at issue here. And I don't mean to be oblique with respect to my discussion of that. It's just simply not something that's direct to my particular clients. And perhaps I shouldn't have brought it up at all. With respect to my clients, Your Honors, for one thing, there are two things that Mr. DiPaolo frankly just sort of throws out there. One of them is this, he refers to having symptoms that he believes are like Irritable Bowel Syndrome. There's nothing in this record that shows that he was ever actually diagnosed with Irritable Bowel Syndrome. And, in fact, with respect to my clients, the entire time period we're talking about here is about five and a half months, during which time period he is examined several times by two different doctors, medical doctors, my clients. He alleges that he was tested multiple times, including getting a RAST test, which is a test for allergens. And, essentially, with respect to the couple of LPNs, it sounds like if what he alleges they said is so, they were rude to him. But there's no allegation that shows that he either had a serious medical need when he saw them, or that they in any way did anything that prevented him from then, in any event, seeing these two doctors several times over that five and a half month period, who were testing, providing diagnosis, treating him. And, in fact, the other nurses advised him to stay away from foods that bothered him while he's still being tested and tried to being diagnosed. I'm not quite sure what it is that we could even conceivably think is possible here, with respect to Mr. DiPaolo, that's anything other than he was dissatisfied. He didn't like how they spoke to him. He doesn't feel comfortable in some fairly vague way during this five and a half month period. He certainly is receiving medical treatment. He's certainly receiving diagnosis. He's seen the doctor several times. Nobody is deliberately indifferent to him, which is a very high standard, nor do we have the serious medical need shown. And even though he is proceeding, per se, in the lower court, Rule 8 is very straightforward. You have to show an entitlement to relief. This Court has been very clear, and the Supreme Court has emphasized, and in the language this Court has used, that especially in the days of the high cost of frivolous litigation, you bring the federal rules and what it is the federal rules require to the forefront. And I think it's appropriate to at least require this inmate, even representing himself, to allege facts that satisfy the elements of his claim. And he has not done that here, I would submit, Your Honor. My time is up. It goes very quickly when you have five minutes, unless you have any questions for me. I actually do have one question. Yes. That prior complaint you were talking about regarding him being litigious, I seem to have found in my notes here that this was a conditions of confinement claim. Is that correct? I believe that that is correct, but I believe the deliberate indifference standard is actually, deliberate indifference is the standard for a conditions of confinement or a medical treatment claim. Okay. Thank you. Yes, Your Honor. All right. Mr. Moore. Thank you, Your Honor. Just a few very brief points in response to the arguments of the appellees. First of all, as Judge Keene pointed out, there are a number of items in here. Mr. Paul did include those items in the record to establish that he had exhausted his remedies as he's required to do, and so we also. He also alleged in his complaint the pursuit of the grievance procedures and identified them by date seriatim. They are the same ones that are being attached also to show exhaustion, but I'm not sure the complaint is agnostic about that. In other words, he specifically alleges the grievances he filed in the complaint. Yes, Your Honor, and he, again, sort of as a pro se plaintiff, knew that he had to do that. In other words, I don't think the attachments can be isolated just for the exhaustion. They are pleaded also as part of a subsequent complaint. Well, Your Honor, yes, they are referenced in his complaint. He does talk about that as part of providing his history there, but I think also counsel mentioned the 730 series of policies of ROSP or the Virginia State Prison System. Those are not referenced in this complaint at all, of course, and those can't be dealt with here with respect to any of these issues. And sort of as a more general point, and I'll come back to that at the very end, with respect to Dr. McDuffie, for example, counsel did sort of admit to paragraph 67, which does say, Mr. DePaola sought help from Dr. McDuffie, among other defendant appellees, both orally and in writing, which brings us to a larger point here as kind of set forth in King v. Rubenstein, that to the extent that the court is concerned at all that the allegations are not as quote-unquote robust, using the word used in King, as they could be, here the district court struck the complaint from the record, essentially dismissed this with prejudice. Dismissals are ordinarily without prejudice, and that's the basis for saying that Mr. DePaola should have been permitted to amend. And, of course, Rule 15 says leave to amend, generally speaking, is granted, is to be liberally granted unless they're freely granted unless we're just as so required. So there's really no prejudice to the appellees to do, as Judge Keenan said, to give Mr. DePaola his day in court, and that's exactly where we are. I mean, certainly he's going to be required to be put to his proof, to establish all these things that he alleges, to establish that, for example, the defendants were more than just rude to him, as counsel said, but that they did say we don't care and that that's the standard that we have here, but he should be permitted to do that, and the district court didn't deal at all with those comments that counsel says are just rude, but that we would suggest reflect a clear deliberate indifference to a serious medical need. With respect to, as the court pointed out, the other case that Judge Niemeyer, you were on the panel of, and, of course, that case was just decided, it was a condition of confinement claims, as Judge Keenan noted as well, and that was the primary focus of his other appeal here. This case deals with his specific medical issues that are identified, the IBS issues, the rash issues, the mental health issues, and whether he should be treated, and even with respect to the standard, he's still entitled to basic medical care, regardless of the status of his confinement or where he is confined, unless the court has other questions for me. Thank you, Mr. Moore. Thank you, Your Honor. I also want to recognize your court appointed, and I want to recognize that service you've provided. It's very important to the system. Thank you, Your Honor. Yes, sir.
judges: Paul V. Niemeyer, Roger L. Gregory, J. Harvie Wilkinson III, William B. Traxler Jr., Pamela A. Harris, Barbara Milano Keenan